**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**WALLACE ROBERTS,**

                                    **Plaintiff,**

**v.**                                              **5:11-cv-1321**
                                                    **(NAM/ATB)**

**CSX TRANSPORTATION, INC.,**

                                    **Defendant.**
_____

**APPEARANCES:**

Thomas J. Cerio, Esq.
Cerio Law Offices
407 S. Warren St., 5th Floor
Syracuse, NY 13202
For Plaintiff

Susan C. Roney
Nixon Peabody LLP
40 Fountain Plaza, Suite 500
Buffalo, NY 14202
For Defendant

Hon. Norman A. Mordue, Senior U.S. District Judge

**MEMORANDUM DECISION AND ORDER**

**I.      INTRODUCTION**

        On November 8, 2011, plaintiff Wallace Roberts, who had been attempting to return to

work as a railroad engineer for defendant CSX Transportation, Inc. ("CSXT"), filed a verified

complaint alleging: age discrimination, in violation of the Age Discrimination in Employment

Act, 28 U.S.C. §§ 621-634; disability discrimination, in violation of the Americans with

Disabilities Act, 42 U.S.C. §§ 12101 et seq.; and retaliation in violation of Title VII of the Civil

Rights Act, 42 U.S.C. § 2000e. Defendant seeks summary judgment (Dkt. No.17) dismissing the complaint. Plaintiff opposes defendant's motion. As explained below, the Court finds defendant is entitled to summary judgment as a matter of law on the ground that this action is time barred.

## FACTS[1]

### 1985 Lawsuit Against Conrail

Plaintiff began working for Consolidated Rail Corporation ("Conrail")[2] in or about 1970. In 1984, at age 37, plaintiff was working as an engineer when he was involved in an accident at Conrail. Plaintiff "ended up with back problems", specifically, "a fractured vertebra on both sides." Plaintiff has not worked for Conrail, or any other employer, since the accident.

In 1985, plaintiff filed an action against Conrail under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq., in which he alleged that he suffered, inter alia, "severe", "disabling" and "permanent" injuries as a result of the accident. In 1988, the action proceeded to trial before a jury. At trial, plaintiff claimed that he was totally and permanently disabled as a result of injuries he sustained while working for Conrail. Plaintiff's treating orthopedic surgeon, Matthew Tomaiuoli, M.D., testified that plaintiff could no longer perform his job as a locomotive

---

[1]The facts are undisputed unless noted otherwise.

[2]According to defendant, in 1997, Norfolk Southern Corporation and CSX Corporation agreed to acquire Conrail through a joint stock purchase. Following an agreed upon division of assets, both CSXT and Norfolk Southern began operating their respective portions of Conrail. The Selkirk yard and the jobs associated with that yard, including plaintiff's, became part of CSXT.

Pursuant to the Implementing Agreement between Conrail, CSXT and the United Transportation Union, the employees who were on disability effective June 1, 1999, would have certain rights to return to work with CSXT if they provided evidence that they were qualified to return to duty. Plaintiff takes issue with defendant's claim that the Implementing Agreement contains such a requirement. This factual dispute is, however, immaterial.

engineer. Plaintiff's economic expert testified at trial that the value of plaintiff's lost wages from the date of the accident to retirement was $808,944. The jury returned a verdict in plaintiff's favor and a damages awarded in the amount of $1.8 million.

## Railroad Retirement Board Disability Benefits

In 1987, plaintiff applied for Railroad Retirement Board ("RRB") disability benefits. Plaintiff claimed that he was "totally disabled from all work." In 1989, following an appeal and a hearing, the RRB issued a decision finding that plaintiff was entitled to a total and permanent disability annuity.

In 1996, after the RRB discontinued plaintiff's benefits, plaintiff requested reconsideration. In a form submitted to the RRB, plaintiff stated that the his back, shoulder, and skin conditions had worsened. The RRB determined that plaintiff was totally and permanently disabled and eventually reinstated plaintiff's disability annuity. Plaintiff has received RRB disability benefits totaling $1,800 per month since November 1996.

Periodically, the RRB has issued notices to plaintiff informing him that he must notify the RRB "If your doctor tells you that your condition ans improved and that you are able to work". Plaintiff has never notified the RRB that his condition has improved or that his is able to work.

## Plaintiff's Request to Return to Work

In or about November 2004, plaintiff contacted CSXT and asked to return to work as an engineer. The parties and their representatives communicated primarily through letters when addressing plaintiff's request to return to work.

## November 16, 2004 Letter

In a letter to Larry Clapp "c/o Labor Relations" dated November 16, 2004, plaintiff wrote:

"After recently speaking with Mr. Milt Brill in Dewitt, NY I am writing to request to be put back to work as an engineer. My man # is . . . Seniority date is 2/05/1970." Plaintiff requested to return to work because he lost the money he won at trial in the stock market.

Because Conrail listed plaintiff as collecting railroad disability benefits, CSXT required that plaintiff medically qualify before he reinstating him as an engineer to his level of seniority. Plaintiff contacted Conrail and requested that it provide information to CSXT so that he could return to work.

### April 21, 2005 Letter

In a letter to plaintiff dated April 21, 2005, Joseph Flanley, Senior Director of Labor Relations & Personnel for Conrail, wrote:

> This refers to your letter dated March 20, 2005 requesting that Conrail provide CSX Transportation with information so that you may return to duty. Conrail records indicate that you are currently collecting a Railroad Retirement Disability Annuity since at least May 1, 1986.

> In order to be considered to return to active Railroad employment you will need to provide the CSXT Medical Department complete medical records that reflect the nature and extent of your disability at the time you were granted your disability annuity and your physician's current findings on examination and recommendations for your activities. You should send the information to: T. J. Neilson, M.D., Chief Medical Officer CSXT . . .

> Once the Medical Department has had the opportunity to review your medical records you will be further advised.

After receiving Flanley's letter, plaintiff asked his physician, Joseph Cambareri, M.D., to submit a report to CSXT stating that he could return to work in his current condition. In a letter to Dr. Neilson dated May 25, 2005, Dr. Cambareri wrote:

> I am Mr. Robert's primary care physician. As you know in approximately 1984 he sustained an injury to his lower back in an accident working for Conrail and subsequently approximately two years later underwent L4-L5 and L5-S1 fusions with

4

bone graphs due to herniated discs in that area and spondylolisthesis of L4-L5 and L5-S1. He rehabbed successfully after approximately 1-2 years and is managing the chronic low back pain with intermittent and anti-inflammatory use.

He has been steadily improving over the pas few years with stiffness of his lower back and is tolerating the pain with Mobic 7.5mg, b.i.d. with no use of any narcotics for pain control.

His level of activity at this point in time is fairly normal and in my opinion he would be able to return to his usual job as a railroad engineer at full duty without any significant limitations in his job activity.

His physical examination is certainly remarkable for a scar in the lower back secondary to his surgery. His range of motion is fairly good with flexion to 70 degrees and extension 10 degrees with good left and right rotation. His distal motor and sensory examination are essentially within normal limits without any neurological deficit to the lower extremities and with excellent motor functions of the lower extremities. The injury had not affected his upper extremities or mental status in any way.

In my opinion Mr. Wallace Roberts is fully fit to resume fill duty as a railway engineer with Conrail without restriction.

Enclosed please find a copy of his most recent lumbar spine films.

## September 30, 2005 Letter

In a letter to plaintiff dated September 30, 2005, Dr. Neilson wrote:

I did want to follow up to let you know I did receive a letter dated May 26, 2005 from Dr. Cambareri. I did not receive copies of his treatment notes regarding your evaluations nor did I receive copies of the notes regarding your evaluations from your previous physician, who indicated to the Railroad Retirement Board that you are occupationally disabled. This information will be necessary before we can consider your qualification. You should contact the doctors, sign the necessary release and have the information forwarded to me.

In a letter to plaintiff dated February 23, 2006, Dr. Neilson wrote:

I have been informed that you indicated that your attorney possesses no medical records regarding the disability claim that occurred in 1989.

To progress your case, you should have the medical records that are available regarding your treatment forwarded to me. It is my understanding that Dr. Cambareri is your present treating physician. Please ensure that the appropriate releases are

signed and have him forward to me copies of his treatment notes regarding your evaluations. After review of this information, I will then follow up with you.

## March 31, 2006 Letter

In a letter to Dr. Neilson dated March 31, 2006, Dr. Cambareri wrote: "Mr. Wallace Roberts suffered a spinal injury to his lumbar spine in 1984. After 5 years he eventually underwent surgery for fusion of L5 and S1 due to spondylolisthesis by Dr. Tomaroli. He has gradually recovered from this. Enclosed are unrelated treatment notes as per your request."

## May 19, 2006 Letter

In a letter to plaintiff dated May 19, 2006, Dr. Neilson wrote:

On May 8, 2006, we did receive a letter from Dr. Cambareri dated 3/31/06. he did indicate that you had undergone surgery by Dr. Tomaroli. He attached to his letter notes regarding your visits on 12/5/05 and 2/6/06. There is no comment in these notes about your history of back pain and surgery.

He should send me copies of the relevant notes in which he has indicated your history of back surgery and his evaluation of you at that time. Please have him forward to me copies of his complete treatment notes regarding your visits so that this information can be developed.

## January 10, 2007 Letter

In a letter dated January 10, 2007, to CSXT, Russell Silverman, M.D., a physician for the Heart Care Center, P.C., wrote:

Wallace is a 59-year old white male who has known hypertension; hypercholesterolemia; tobacco abuse, which he has quit; positive family history of heart disease; coronary artery disease with a PTCA and stent x 4 to the RCA inferior and posterior wall MI, PVCs; and third-degree heart block. Wallace reports that he is feeling quite well. We received a letter from him on December 20th. he is waiting to be cleared to go back to work. He has been on disability due to injury sustained at work from a noncardiac standpoint. This disability has continued on for 22 years. His cardiac status has improved significantly. he has been feeling much better in regards to working and in regards to his injury sustained at work that caused him to be disabled, he is feeling much better.

6

He had a stress echocardiogram on September 5, 2006. Wallace walked on a Bruce protocol. Resting EKG revealed sinus rhythm with a normal ejection fraction. Mitral insufficiency was felt to be +1. He exercises on a Bruce protocol. Stress test was negative for ischemia.

From a cardiac standpoint only, this patient will be set to return to work. He will be scheduled for a repeat stress test. He will be getting clearance from his primary care doctor, Dr. Cambareri to further evaluate his ability to return to work but from a cardiac standpoint he has no restrictions and he can resume work.

## February 12, 2007 Letter

In a letter to plaintiff dated February 12, 2007, Dr. Neilson wrote:

I did receive the December 26, 2006 letter from Dr. Cambareri indicating he has no medical notes in his file regarding his treatment of your back injury nor does he have any of the reports from the treating surgeon.

Since this was a disability claim in 1989 I am assuming that you did apply to the Railroad Retirement Board. You should contact them and ensure that they forward to me the records they have. This would be the information they utilized in making the determination for your disability annuity.

## June 12, 2007 Letter

In a letter to plaintiff dated June 12, 2007, Dr. Neilson wrote:

We did receive information from the [RRB] to include the report from Dr. Elstein dated July 29, 1987, where he informed the [RRB] that you could do no heavy lifting, bending or stooping. He stated that you were capable of a sedentary type of work wearing a back support.

Also, there is a report to the [RRB] from Dr. Bastable indicating that he informed the Board that you were totally and permanently disabled from work as an Engineer on the Railroad. Based upon this information, we would not progress a qualification.

If you are interested in knowing what we can do to help you develop options, you can contact Mr. Scott Marshall, our Manager of Vocational Rehabilitation . . . . He can explain the vocational rehabilitation process and let you know if there are things we can do to help you develop options.

After receiving this letter from Dr. Neilson, plaintiff contacted Angie Barton, "CSXT's Manager of Medical Management" to express his disagreement with the decision not to progress

7

his application.

## July 23, 2007 Letter

In a letter to plaintiff dated July 23, 2007, Dr. Neilson stated:

Ms. Angie Barton, our Manager of Medical Management, has indicated that you called the office and disagreed with the decision that was made.

Let me reconfirm that the decision not to progress your qualification as Engineer is based upon the information you submitted to the [RRB] where Dr. Bastable indicated that you were permanently disqualified from your position as Engineer on the Railroad.

Again, if you are interested in alternate employment, you should follow up with Mr. Scott Marshall, our Manager [of] Vocational Rehabilitation . . . .

Plaintiff never contacted Marshall. He did, however, retain Talarico & Associates to represent him and attorney Joseph Talarico proceeded to correspond with Dr. Neilson.

## October 19, 2007 Letter

In a letter to Mr. Talarico dated October 19, 2007, Dr. Neilson wrote:

I received your letter of September 13, 2007, as well as the reports from Dr. Silverman and Dr. Cambareri that you attached to your correspondence. As you may be aware, this information was previously made available to us for us to review.

Also reviewed in the qualification process was information from the treating physician, Dr. Bastable. Mr. Roberts was informed that this information was utilized in the letter to him of July 23, 2007.

As I previously indicated, if Mr. Roberts is interested in alternate employment, he can follow up with Mr. Scott Marshall, Manager [of] Vocational Rehabilitation . . . .

## December 13, 2007 Letter

In a letter to Mr. Talarico dated December 13, 2007, Dr. Neilson wrote:

Enclosed is a copy of a letter from Dr. Bastable dated October 11, 1988 to the RRB in which the doctor states he believes Mr. Roberts is totally permanently disabled for work as an engineer on the railroad. Also included are copies of various office visit notes and correspondence from Dr. Tomaroli, who also indicates Mr. Roberts will

never return to work at his previous position due to his chronic back problem. Additional records include a copy of Dr. Stephen S. Cost's report, who performed a disability evaluation on Mr. Roberts in May of 1996 and indicated Mr. Roberts still remained disabled. lastly, is a copy of a Medical Assessment of Residual Functional Capacity completed by Dr. yuan for the [RRB] in July of 1996 and copies of the doctor's office visit notes regarding Mr. Robert's [sic] treatment.

The narratives of Dr. Silverman and Dr. Cambareri do not reflect that they are aware of these records. I hope that this clarifies things for you.

### February 1, 2008 Letter

In a letter to Mr. Talarico dated February 1, 2008, Dr. Neilson wrote:

I reviewed your letter of January 2, 2008. As you are aware I reviewed all the medical information available, taking into consideration not only the surgery that was performed, but the past history as well as the routine examinations that were forwarded to me. I have communicated my decision to you and Mr. Roberts. If Mr. Roberts is interested in alternate placement, he can pursue this through our Vocational Rehabilitation Program as I previously stated.

### October 9, 2009 EEOC Charge

On October 9, 2009, plaintiff filed a charge with the EEOC alleging discrimination based on age and disability as well as retaliation. In the intake questionnaire, plaintiff stated that the date of discrimination was "continuous" and that "CSX Transportation has failed to reinstate Wallace Robert's [sic] employment as a result of retaliation for 1984 lawsuit demonstrating injury and disability suffered while on duty." Plaintiff further stated that:

Wallace Roberts injured while on duty as fireman for railroad. lawsuits filed + prosecuted demonstrating Conrail was liable. Wallace Roberts sought to be re-employed as he was physically rehabilitated in 2003. Initially cleared for re-employment Conrail + CSX + subsequently denied re-employment. Wallace Roberts is 62 years old + cleared by two medical physicians to return to work as an engineer. As a result of mediator's . . . [illegible] investigation required as to whom + what type of person has decided to deny re-employment of Wallace Roberts. Upon information and belief, CSX Transportation is relying on old medical records to deny re-employment.

### January 25, 2010 Letter

9

Plaintiff submitted a letter dated January 25, 2010 from Dr. Cambareri to CSXT. In the letter, Dr. Cambareri wrote:

This letter is in regard to my patient; Wallace Roberts.

I recently examined his back, legs, and functional capacity at my office. He has full range of motion of his lumbar spine in flexion, extension and rotation. His distal motor, sensory, and reflex exams are completely normal. His recent x-rays show evidence of distant L4-L5 surgery, probable laminectomy, with mild to moderate degenerative disc and facet joint changes consistent with his age. In my opinion, he is fully capable of returning to work at his former job as an engineer. He will provide information from his cardiologist regarding his coronary disease status. There are no existing records regarding his back treatment since he stopped treating for this condition in the early 1990's and his orthopedic surgeon has passed on the records destroyed or disposed. I have been "treating" him for the back condition, but basically there has been no treatment by me since he takes acetaminophen as needed and does his back exercises daily.

### March 3, 2010 Letter

Plaintiff contacted R.C. McVeen, General Chairman of the United Transportation Union, to ask for his "assistance." In a letter to Chairman McVeen dated March 3, 2010, E. St. Amant, the director of labor-relations for CSXT, wrote:

CSX Medical Department has reviewed the updated report submitted by Mr. Roberts from his family physician, Dr. Cambareri, dated January 25, 2010 and have determined that the report is not sufficient since his family physician is not a specialist nor has he examined the original records from any Mr. Roberts [sic] treating physicians who deemed him totally and permanently disabled from returning to work as an engineer. Dr. Cambareri indicated in the most recent report that ". . . there has been no treatment by me" . . . for Mr. Roberts' back condition.

In view of the foregoing, the updated report was found to be insufficient to warrant a medical review at this time.

If Mr. Roberts submits a current report from a specialist regarding his back along with a recent functional capacity evaluation, Dr. Nielson [sic] will review the information.

### April 13, 2010 Orthopedic Report

Plaintiff sent CSXT a report dated April 13, 2010 by Stephen Robinson, M.D., an

orthopedist at Syracuse Orthopedic Specialist who examined plaintiff. Dr. Robinson noted that plaintiff complained of "dysfunction and/or pain in the lumbar spine", "low back pain, with numbness in right lower extremity," and indicated that he injured his low back in 1984 "which led to him going out of work, states he is now looking to try and go back to work but employer would like a letter from a specialist that he can do so".

Dr. Robinson examined plaintiff and found:

The lumbar spine is nontender to palpation. There is NO deformity. Forward flexion fingertips to . . . knees. Extension 15 degrees with no pain. Right Side Bends 10 degrees with no pain. Left Side Bends 10 degrees with no pain. Straight leg raising on the right is 90 degrees with no pain. Straight leg raising on the left is to 90 degrees with no pain.

Dr. Robinson noted that plaintiff had "decreased sensation in the right anterior thigh, medial calf and lateral calf." Other than a "few patches of psoriasis", the rest of the exam revealed normal results.

Dr. Robinson's assessment was "low back syndrome" and commented that: "The patient has some chronic mild low back pain. He has been presented a job with the railroad that he feels he is capable of handling. Based on the statements that he can handle this job, I do agree that he could."

**April 23, 2010 Letter**

In letter to plaintiff dated April 23, 2010, Dr. Neilson wrote:

I received a copy of the orthopaedic evaluation performed by Dr. Stephen Robinson on 4/13/2010 that Mr. Richard McVeen forwarded to this office. I did not receive a recent functional capacity evaluation that was requested for review by E. St. Amant, Director - Labor-Relations, in her letter of 3/3/10. Please forward this information for consideration of your ability to return to work.

**January 6, 2011 Functional Capacity Evaluation**

On January 6, 2011, plaintiff underwent a functional capacity evaluation. In a letter to Dr. Cambareri dated January 9, 2011, the functional capacity evaluator stated: "The results indicate that Mr. Roberts is feasible to perform work at the LIGHT Physical Demand Level for an 8 hour day according to the Dictionary of Occupational Titles, U.S. Department of Labor, 1991." Plaintiff did not provide this functional capacity evaluation to CSXT.

### August 25, 2011 Right to Sue Letter

On August 25, 2011, the EEOC issued a Right to Sue letter to plaintiff. On November 8, 2011, plaintiff commenced this action.

### DISCUSSION

Plaintiff brings three causes of action: age discrimination, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621-34; disability discrimination, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et sq.; and retaliation, in violation if 42 U.S.C. § 2000e (Title VII). Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground, inter alia, that plaintiff's claims are time-barred because his EEOC charge of discrimination was untimely. Plaintiff opposes defendant's motion.

### Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue with regard to any material fact, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When deciding a summary judgment motion, the court must "resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999).

**Timeliness of Plaintiff's EEOC Charge**

Before commencing an action in federal court alleging violations of the ADEA, the ADA and Title VII, a plaintiff must file a timely charge with the EEOC. 42 U.S.C. § 12117 (incorporating into the ADA the exhaustion requirement of Title VII, codified at 42 U.S.C. § 2000e–5); *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 158 (2d Cir.2008) (ADEA); *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (per curiam) (Title VII). "[W]hen a plaintiff fails to file a timely charge with the EEOC, the claim is time barred." *Butts v. City of New York Dep't of Hous. Pres. & Devel.*, 990 F.2d 1397, 1401 (2d Cir.1993), superseded on by statute on other grounds as stated in *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir.1998). "An employment discrimination claim must be filed with the EEOC within 300 days of the alleged discrimination in a state, like New York, with a fair employment agency." *Pikulin v. City Univ. of New York*, 176 F.3d 598, 599 (2d Cir.1999).

There are exceptions to the 300–day statutory bar; the limitations period "may be tolled by evidence of a continuing violation, or waiver, estoppel, or equitable tolling ." *Curtis v. Airborne Freight Corp.*, No. 98 Civ. 4062(SAS), 1998 WL 883297, at *13 (S.D.N.Y. Dec.17, 1998) (citing *Delaware State College v. Packs*, 449 U.S. 250, 257 (1980)).

On or about June 12, 2007, CSXT notified plaintiff that he would not be reinstated as an engineer. Plaintiff filed his EEOC charge 850 days later, on October 9, 2009. Thus, the complaint in this case is time-barred unless an exception to the 300-day limitations period applies.

**Continuing Violation**

An exception to the 300-day limitations period "exists for claims that the discriminatory acts were part of a continuing policy and practice of prohibited discrimination." *Valtchev v. City*

*of New York*, 400 F.App'x 586, 588 (2d Cir. 2010). "The continuing violation doctrine applies 'to cases involving specific discriminatory policies or mechanisms such as discriminatory seniority lists.'" *Id.* (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993). The Second Circuit has cautioned, however, that "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Id.* (internal quotation marks omitted). "To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." *Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004).

Plaintiff argues that CSXT's March 3, 2010 request for "a current report from a specialist regarding his back along with a recent functional capacity evaluation," and April 23, 2010, letter from Dr. Neilson stating that he had not received "a recent functional capacity evaluation" are part of a continuing policy of discrimination. Even assuming these are not discrete discriminatory acts, *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–14 (2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire ... are not actionable if time barred, even when they are related to acts alleged in timely filed charges"), and are part of a continuing violation, the doctrine is inapplicable because plaintiff has failed to allege that any act of discrimination occurred within the 300-day limitations period, December 13, 2008 to October 9, 2009. Indeed, there is no evidence in the record that there were any interactions between the parties during that time period.

### Equitable Tolling

Plaintiff argues that equitable tolling should apply and the Court should find his claims

timely because: "CSXT would not be unduly prejudice [sic] and cannot show prejudice if filing period was modified based on the fact that Mr. Roberts continued to work with CSXT by provide [sic] documentation after Defendant's alleged date of notice of adverse employment action of June 12, 2007."

Equitable tolling may be appropriate in situations "where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period; where [the] plaintiff was unaware of ... her cause of action due to misleading conduct of the defendant; or where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion." *Zerilli–Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (internal quotations and citations omitted).

Even viewing the record in the light most favorable to plaintiff, there is no evidence that would support a finding that the application of equitable tolling would be appropriate in this case. It is undisputed that plaintiff, who was represented by counsel, filed the EEOC charge 850 days after he received notice that CSXT would not reinstate him. Nothing in the record suggests defendant engaged in misleading conduct. Nor does plaintiff contend that a medical condition prevented him from filing a timely EEOC charge. Thus, equitable tolling does not apply and since there were no events that occurred within the limitations period, plaintiff's claims are time-barred.

The Court does not reach defendant's remaining arguments.

## CONCLUSION

Accordingly, it is hereby

**ORDERED** that defendant's motion for summary judgment is **GRANTED**; and it is further

**ORDERED** that the complaint is **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

Date:   March 31, 2014

Norman A. Mordue
Senior U.S. District Judge